**KRONENBERGER BURGOYNE, LLP**

Karl S. Kronenberger (Bar No. 226112)
Henry M. Burgoyne, III (Bar No. 203748)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KBInternetLaw.com
hank@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Plaintiffs

FILED

2010 JAN 12 PM 3:09

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**1016363 ALBERTA LTD.**, a numbered Alberta, Canada corporation, *dba* **JUST THINK MEDIA; 1021018 ALBERTA LTD.**, a numbered Alberta, Canada corporation, *dba* **JUST THINK MEDIA**,

    Plaintiffs,

    **v.**

**CONSUMERINFO.COM, INC.**, a California corporation; **EXPERIAN INFORMATION SOLUTIONS, INC.**, an Ohio corporation,

    Defendants.

CASE NO. SACV-10-00049-JVS(AN)

**COMPLAINT**

**DEMAND FOR A JURY TRIAL**

BY FAX

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**INTRODUCTION**

1.    Defendant ConsumerInfo.com, Inc. is the Federal Trade Commission ("FTC")'s poster child for false and deceptive advertising.  The FTC has created two public interest videos warning consumers about the misleading advertising of Defendant ConsumerInfo.com, and these public interest videos may be found at <www.FreeCreditReport.gov> and at <www.FTC.gov/freereports>.

2.    On two occasions the FTC initiated legal action against Defendant ConsumerInfo.com *dba* Defendant Experian Consumer Direct, finding that Defendants' advertisements for their credit-related services were false and misleading.

3.    Specifically,    the    advertisements    of    Defendant ConsumerInfo.com and its corporate sibling and business partner Defendant Experian Information Solutions, Inc. (collectively, "Defendants") have created and continue to create the false impression among reasonable consumers that Defendants' services are free.

4.    Defendants use the term "free" throughout their massive advertising campaign, and in fact incorporate the term "free" in their principal trademark, FREECREDITREPORT.COM

5.    In actuality, however, to acquire the free credit report, Defendants require consumers to enroll in a fee-paying service.

6.    Defendants are required pursuant to FTC-related injunction to provide notice to consumers that Defendants' services are not actually "free" and that Defendants' services are not associated with the government-mandated free credit reports at www.AnnualCreditReport.com.  However, Defendants deliberately diminish and underplay this required notice in a way to make the notice less conspicuous to consumers, thereby increasing consumer confusion and Defendants' profits.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

7.    As a result, on information and belief, a large portion of consumers who are enrolled in Defendants' service do not realize the enrollment is occurring and do not realize they will be charged.   Many consumers simply did not know that they would be charged for what they thought was a free service.

8.    As a further result, Defendants have received countless consumer complaints that their advertising is false, deceptive, and misleading.  In addition to complaints Defendants received directly, the FTC and Better Business Bureau ("BBB") have received thousands upon thousands of complaints about Defendants' false, deceptive and misleading advertising.

9.    Plaintiffs compete with Defendants in the provision of credit-related services.

10.    However, as a result of Defendants' false and deceptive advertising, Defendants have gained an unfair advantage over Plaintiffs and others in the credit services industry.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over the federal false advertising claims pursuant to the Lanham Act, 15 U.S.C. §1121 and 28 U.S.C. §§1331 & 1338.

12.    This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of California.

13.    Venue is proper in the Central District of California pursuant to 28 U.S.C §1391(b)(1) because the Defendants reside in this District.

## PARTIES

14.    Plaintiff 1016363 Alberta Ltd. is a numbered Alberta, Canada corporation, with its principal place of business in Sherwood, Alberta, Canada, and which operates under the fictitious business name Just Think

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Media.

15.    Plaintiff 1021018 Alberta Ltd. is a numbered Alberta, Canada corporation, with its principal place of business in Sherwood, Alberta, Canada, and which operates under the fictitious business name Just Think Media.

16.    Defendant ConsumerInfo.com, Inc. is a California corporation with its principal place of business in Irvine, California.

17.    Defendant Experian Information Solutions, Inc. is an Ohio corporation with its principal place of business in Irvine, California.

**THE RIGHT UNDER FEDERAL LAW TO A FREE CREDIT REPORT**

18.    The Federal Fair Credit Reporting Act ("FCRA") defines "credit report" as a written or electronic statement made by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected for the purpose of serving as a factor in establishing the consumer's eligibility for credit.

19.    The three major consumer reporting agencies in the United States are Experian, TransUnion, and Equifax.  On information and belief, Experian is owner and corporate parent of Defendants.

20.    The FCRA guarantees individuals access to a free credit report from each of the three nationwide reporting agencies—Experian, Equifax, and TransUnion—every twelve months.

21.    AnnualCreditReport.com is the only authorized source for individuals to get their free annual credit report under federal law.

22.    The FTC has commented: "The [FTC] has received complaints from consumers who thought they were ordering their free annual credit report, but instead paid hidden fees or agreed to unwanted services." (<www.ftc.gov/freereports>.)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No.

3

**COMPLAINT**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

23.    The FTC has thus warned consumers:  "Don't be fooled by TV ads, email offers, or online search results.  Go to the authorized source when you request your free report."  (<www.ftc.gov/freereports>.)

24.    The FTC has created public interest videos about Defendants, which are located at <www.FreeCreditReport.gov> and <www.FTC.cog/freereports>.  For years, Defendants have aired television commercials featuring a college-age individual singing about Defendants' service.   The FTC's videos spoof Defendants' television commercials specifically to warn consumers about Defendants' false and misleading marketing practices.

25.    The FTC's videos contain the following statements about Defendants:  "they say they're free, don't be misled . . . once you're in their tangled web, they'll sell you something else instead . . . for truly free credit reports there's only one authorized source . . . beware of the others, there's always a catch.  Their ads can be funny, so don't be deceived . . ."

26.    A consumer may want to obtain a copy of his/her credit report to determine that all of the information is accurate, complete, and up-to-date before he/she applies for a loan for a major purchase like a house or car, buy insurance, or apply for a job.

27.    A consumer may also want to obtain a copy of his/her credit report to help guard against identity theft—i.e. the possibility that someone else might use the consumer's personal information to commit fraud.

**DEFENDANTS' BUSINESS**

28.    Since before August 2008, Defendants have owned the domain name <freecreditreport.com>.

29.    Defendants have developed a website, which it displays in connection with the domain name <freecreditreport.com> (the "FreeCreditReport.com Website").

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

30.    Defendants claim that they have trademark rights in the mark FREECREDITREPORT.COM for use in connection with the sale of credit related services.

31.    Despite the name of the website, the FreeCreditReport.com Website is a commercial website, with no affiliation whatsoever with the government website located at AnnualCreditReport.com.

32.    Defendants sell credit-related services through the FreeCreditReport.com Website.

33.    When a consumer visits the FreeCreditReport.com Website, he/she is taken to a landing page, which states in large prominent text, "You've seen the commercials . . . now get America's # 1 Free Online Credit Report!" (the "Landing Page").    On the Landing Page, users are encouraged to click on a large and prominently displayed button, with the caption, "Click here to see your Free Credit Report & Score!" (the "Free Credit Report Button").

34.    When a consumer clicks on the Free Credit Report Button on the Landing Page, he/she is taken to a new page (the "Order One Page"), which states at the top "You're only steps away from viewing your FREE CREDIT REPORT and SCORE!"    This web page asks the consumer to provide personal information, namely the consumer's name, email address, and street address and then to click on a button labeled "Continue."

35.    When a consumer enters his/her personal information into the Order One Page and clicks continue, he/she is taken to a new web page (the "Order Two Page"), which states at the top, "You're only steps away from viewing your FREE CREDIT REPORT and SCORE! PLUS, your FREE CREDIT REPORT and SCORE are available online for 30 days!"    This web page asks the consumer to provide additional personal information, namely his/her social security number, date of birth, and credit card information.

36.    When a consumer provides Defendants with this personal information through the FreeCreditReport.com Website, Defendants provide the consumer with temporary access to a credit report.

37.    Additionally, when a consumer provides Defendants with his/her personal information through the FreeCreditReport.com Website, the consumer is automatically enrolled in Defendants' Triple Advantage service, initially for a short trial and then at $14.95 a month.

38.    A consumer must affirmatively contact Defendants to terminate the Triple Advantage service and not be charged $14.95 a month.

39.    Moreover, it isn't possible for a consumer to obtain a credit report from Defendants without enrolling for the Triple Advantage service.

40.    The Landing Page mentions the automatic enrollment in Triple Advantage only in 10-point blue text on a lighter blue background, and the font size is over twice as small as the font sizes of the words, "FREE," located on the same page.  Further, Defendants have intentionally placed the notice regarding automatic enrollment on the opposite side of the page as the "Click Here" button to obtain the so-called "free" credit report.  On information and belief, Defendants intentionally located such notice in a location not in close proximity to the "Click Here" button because such placement results in consumer confusion benefiting Defendants.

41.    The Order Page One does not mention the automatic enrollment in Triple Advantage.  The Order Page Two only mentions the automatic enrollment in Triple Advantage at the bottom of the page in 10-point text.

### DEFENDANTS' ADVERTISING

42.    Defendants have engaged in extensive promotion and advertising of the FreeCreditReport.com Website.

43.    On information and belief, since the summer of 2008, Defendants have spent in excess of $100 million advertising the

1   FreeCreditReport.com Website.

2       44.     Defendants advertise the FreeCreditReport.com Website in

3   various media, including television, radio, print, and online media.

4       45.     The online media used by Defendants to advertise its

5   FreeCreditReport.com Website include banner advertisements, text

6   advertisements, contextual advertisements, and search engine

7   advertisements.

8       46.     A significant portion of Defendants' advertisements for the

9   FreeCreditReport.com Website display the term "freecreditreport.com."

10      47.     Additionally, a significant portion of Defendants' advertisements

11  for the FreeCreditReport.com Website display the term "free" separate and

12  apart from the term "freecreditreport.com."

13      48.     Thus, Defendants' advertisements for the FreeCreditreport.com

14  Website have also prominently displayed or transmitted the following and

15  similar language:

16      • "Find out with your Free Credit Score!"

17      • "Get my FREE Credit Score!"

18      • "GET YOUR FREE CREDIT REPORT!"

19      • "FREE CREDIT SCORE"

20      • "Get It FREE"

21      • "SEE IT FREE"

22      • "Free Credit Score & Report!"

23      • "AMERICA'S #1 FREE CREDIT REPORT & SCORE"

24      • "Your FREE Credit Report & Score in 2 easy steps."

25      • "You'll find your free credit score and report and

26          freecreditreport.com."

27      • "Log onto freecreditreport.com to get your free credit score and

28          report."

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No.

**COMPLAINT**

- "Log onto freecreditreport.com and get your credit report instantly online for free."
- "I go online and in seconds I get my credit report and credit score free."
- "In the next thirty seconds I'm going to tell you how you can check your own credit for free."
- "It's fast, secure, and it's free."
- "Over the next year a new law goes into effect giving you the right to see your credit files from each of the national credit bureaus for free.  But you don't have to wait.  Your free Experian credit report is available right now from freecreditreport.com"
- "Go to freecreditreport.com and learn how to get your free credit report."
- "You can now receive your credit report for free at freecreditreport.com"

49.    On information and belief, the term "free" appears throughout a majority Defendants' advertisements.

50.    Moreover, many of Defendants' advertisements have not mentioned or otherwise disclosed, or disclosed adequately, the existence of Defendants' Triple Advantage service, or that to acquire the free credit report, consumers are required to enroll in Defendants' fee-based service.

**DEFENDANTS' FALSE AND CONFUSING ADVERTISEMENTS**

51.    Defendants' advertisements for the FreeCreditReport.com Website are false and confusing.

52.    Defendants' advertisements give consumers the false impression that Defendants' service is free and that consumers will not be charged.

53.    In reality, to obtain a credit report from Defendants, consumers

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    are required to enroll in a fee-based service.

2    54.    On information and belief, hundreds of thousands—if not millions

3    of consumers—have been confused and misled by Defendants as a result of

4    their false advertisements.

5    55.    Based on Defendants' false advertisements, many consumers

6    mistakenly believe that the FreeCreditReport.com Website is the

7    government-mandated AnnualCreditReport.com, where consumers can

8    actually obtain their credit reports for free.

9    56.    Defendants do nothing to disabuse consumers of this confusion,

10   and in fact, play upon it, by constantly reiterating the false statement that

11   Defendants' service in free.

12   57.    The public record is replete with tens of thousands of consumer

13   complaints about Defendants' false and misleading advertisements.

14   58.    Moreover, on information and belief, Defendants possess

15   hundreds of thousands, if not millions, of additional consumer complaints

16   about Defendants' false and misleading advertisements.

17   59.    In one complaint made to the FTC a consumer said:

18        The TV ads for freecreditreport.com are nothing
          more than a misleading scam. The fact that these
19        ads continue proves that the scam is working. I was
          mislead myself until I realized there is nothing free
20        about freecreditreport.com. This scam is a
          **deliberate attempt to mislead consumers** into
21        thinking that freecreditreport.com is
          annualcreditreport.com. [emphasis added]

22   60.    In another complaint made to the FTC a consumer said:
          What ever happened to truth in advertising anyway?
23        freecreditreport.com **IS NOT FREE**, not even by a
          long shot, and it should state that in CLEAR
24        CONCISE LANGUAGE. My mother has been duped
          by this site, and she's not very internet savvy, it's a
25        damn shame. [emphasis added]

26

27   61.    In another complaint made to the FTC a consumer said:

28        I teach computer classes to seniors at the Monrovia

Case No.                                          **COMPLAINT**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Unified School District in Southern California. My anecdotal evidence that the www.annualcreditreport.com web site is confusing is that out of about 30 students, maybe only about 5 or 10 seniors can figure it out. As for www.freecreditreport.com, I have students constantly ask if that is the officially sanctioned web site to get their 3 free credit reports. The www.freecreditreport.com web site and it's commercials are **VERY DECEIVING** and should be stopped.  [emphasis added]

62.    In another complaint made to the FTC a consumer said:

The "FreeCreditReport.com" ads, while entertaining, are **deliberately false**. [emphasis added]

63.    In another complaint made to the FTC a consumer said:

Please shut down "freecreditreport.com" This website is **fraudulent** and masks itself as the "FREE" version Uncle Sam provides. [emphasis added]

64.    In another complaint made to the FTC a consumer said:

Recently my wife signed up through Freecreditreport.com to obtain what she believed was a free credit report for she and I. As a result of signing up we discovered after several months we were being charged via electronic debit from our bank account. The charge was approximately $15.00 for each of us per month. Although she was able to sign us both up for the "free" service. Freecreditreport.com required us each individually to cancel the subscription. We never would have signed up if we knew up front (not fine print) that we would be charged $30.00 per month. I support any regulation that would prevent this **deceptive advertisment** (sic). [emphasis added]

65.    In another complaint made to the FTC a consumer said:

The activities of the Experian www.freecreditreport.com are **disingenuous** and

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

do not significantly contribute to providing the consumers to enhance their knowledge of personal financial management. [emphasis added]

66. In another complaint made to the FTC a consumer said:

As a gerontologist, I witness older adults becoming confused about "freecreditreport.com" when in fact it is a paid service to monitor one's credit activity. Very deceptive. The TV ads are even worse than the print media. Older adults have commented to me "how can they use that website name if it's not free?" Good point. **Websites that use the word "free" should in fact be free, no charge for any services.** Plus, this company should be required to put it on the first page and the "about us" page that to obtain the federally mandated centralized source - the truly free source, go to annualcreditreport.com. [emphasis added]

67. In another complaint made to the FTC a consumer said:

When I went to FreeCreditReport.com, I was told that my "reports" would be free, but every time I went to the next screen, the buttons and links where I'd assume to find the links and buttons to continue were actually "agree" buttons/links that took me to pages that kept trying to sell me more and more services. The average consumer does not pay attention to links when they click on them. FreeCreditReport preys on this.

68. In another complaint made to the FTC a consumer said:

"Free" should mean FREE! FreeCreditReport.com shouldn't be allowed to use that name at all. It's **very misleading** once you visit their site. Plus, the awareness of their site versus the Federal Government's site (annualcreditreport.com) is incomparable. PSA's should run 10x more for annualcreditreport.com to combat the other non-free site. [emphasis added]

69. In a complaint filed with the Better Business Bureau a consumer

said:

> Come on BBB **lets stop freecreditreport from ripping off any more consumers.** In their advertisement it clearly states: FREE CREDIT REPORT and SCORE! Then they want your personal credit card information for what purpose, who knows.  [emphasis added]

70.    In another complaint made to the Better Business Bureau a consumer said:

> I am with thousands of others here. I share their concern and experience. **FreeCreditReport.com is not free.** they should not be allowed by law, to mislead and lie to the public under the guise of free. It has a price. That is not free. I was directed to the Large Type, not the fine print.  [emphasis added]

71.    In another complaint made to the Better Business Bureau a consumer said:

> I wanted to write to let everyone know that freecreditreport.com **is a fraud**. They are NOT free at all. When I went online to check my credit report they asked for my credit card number saying that it was just procedural and that they would not charge me. Well, little did i know that i had to read the fine print which of course you don't think you have to do with a name like FREEcreditreport.com. They charged me after a few days had passed since checking the report.  [emphasis added]

72.    In another complaint made to the Better Business Bureau a consumer said:

> The name freecreditreport.com is **misleading and deceptive**. It is not free. [emphasis added]

73.    In another complaint made to the Better Business Bureau a consumer said:

> Scam. **It's not free,** and it's more than just a report.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No.

**COMPLAINT**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

> I don't know why they get away with it doing this and running SO many advertisements on television with no disclaimers on what they are really offering. It doesn't surprise me that so many people on this site are upset with this company. [emphasis added]

74.    In another complaint made to the Better Business Bureau a consumer said:

> WARNING! DO NOT USE THIS COMPANY! **MISLEADING REPRESENTATION!** Absolute opposite of what they are representing themselves to be. This service is NOT FREE! [emphasis added]

75.    On information and belief, the above-enumerated complaints are representative of the reaction of hundreds of thousands if not millions of consumers to Defendant's false and deceptive advertisements.

## THE FTC GOES AFTER DEFENDANTS FOR THEIR FALSE ADVERTISEMENTS

76.    As a result of Defendants' false and deceptive advertisements, the FTC has twice initiated legal proceedings against Defendants.

77.    On August 15, 2005 the FTC filed a complaint against Defendant ConsumerInfo *dba* Experian Consumer Direct and alleged:

> Many of Consumerinfo's radio, television, and Internet advertisements have not mentioned or otherwise disclosed, or disclosed adequately, the existence of Consumerinfo's Credit Check Monitoring Service, or any free trial period in connection with the Service. Many consumers were thus unaware when signing up for their free credit report that they were also automatically signing up for Consumerinfo's Credit Check Monitoring Service, and would incur a $79.95 charge unless they cancelled within 30 days.

78.    The FTC also alleged that Defendant ConsumerInfo had misled consumers about its association with the annual free credit report program

1   for which U.S. consumers are eligible by federal law.

2      79.    The FTC and Defendant ConsumerInfo ultimately entered into a

3   stipulated judgment and order, whereby ConsumerInfo.com was enjoined

4   from engaging in false and deceptive advertising and was required to pay

5   $950,000 in remuneration, which is attached hereto as Exhibit A.

6      80.    Defendants have violated that order.

7      81.    After the order was entered, the FTC found that Defendant

8   ConsumerInfo *dba* Experian Consumer Direct continued to run

9   advertisements that failed to explain that consumers would automatically be

10   charged a membership fee if they did not cancel their service.

11      82.    Thus, ConsumerInfo entered into a supplemental stipulated

12   injunction and judgment, requiring ConsumerInfo to pay additional

13   remuneration to the FTC for its false advertisements, which is attached

14   hereto as Exhibit B.

15      83.    To date, Defendant ConsumerInfo has paid the FTC in excess

16   of $1,000,000 to settle the false advertising charges brought by FTC.

17      84.    The FTC's concerns about Defendants did not end with these

18   two court orders and injunctions.

19      85.    The FTC has created public interest videos about Defendants,

20   which are located at <www.FreeCreditReport.gov> and

21   <www.FTC.gov/freereports>.  For years, Defendants have aired television

22   commercials featuring a college-age individual singing about Defendants'

23   service.  The FTC's videos spoof Defendants' television commercials

24   specifically to warn consumers about Defendants' false and misleading

25   marketing practices.

26      86.    The FTC's videos contain the following statements about

27   Defendants:  "they say they're free, don't be misled . . . once you're in their

28   tangled web, they'll sell you something else instead . . . for truly free credit

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  reports there's only one authorized source . . . beware of the others, there's

2  always a catch.  Their ads can be funny, so don't be deceived . . ."

3      87.      Moreover, in the FTC's request for comments to proposed

4  amendments to the FTC's Free Annual File Disclosures Rule, 16 CFR Part

5  610, the FTC highlighted Defendants' misconduct (noting that "Congress

6  was well aware of current practices in this area, as well as the

7  Commission's efforts to address them in the Consumerinfo.com

8  settlements").

9      88.      Despite these court orders and other FTC action, Defendants

10  have continued to engage in false and deceptive advertising as described

11  above.

12  **PLAINTIFFS' BUSINESS**

13      89.      Plaintiffs operate a diversified set of online businesses.

14      90.      Beginning in 2008, Plaintiffs began offering consumers credit-

15  related services through an Internet website located at

16  <www.creditreportamerica.com> ("Plaintiffs' Website").

17      91.      Plaintiffs expended considerable resources promoting Plaintiffs'

18  Website, including through online advertising.

19      92.      Plaintiffs' Website directly competed with Defendants'

20  FreeCreditReport.com website.

21      93.      However, because of Defendants' false and deceptive

22  advertising, consumers believed that Defendant provided its credit-related

23  services for free and/or were affiliated with the government-mandated

24  website located at <annualcreditreport.com>.

25      94.      Thus, as a result of Defendants' false and deceptive advertising,

26  Defendants enjoyed a competitive advantage over Plaintiff and other credit-

27  related services that did not employ similar false advertisements.

28      95.      On information and belief, the average consumer was far more

Case No.

**COMPLAINT**

1  likely to select Defendants' FreeCreditReport.com website than Plaintiffs' or

2  its competitors' services as a direct result of Defendants' false

3  advertisements and the consumer's mistaken impression that he or she was

4  obtaining a free service and/or a free, government-sponsored service.

5  96.    As a result of Defendants' false and deceptive advertisements,

6  Plaintiffs have been substantially harmed in the form of lost sales.

## CLAIM FOR RELIEF

## FALSE ADVERTISING UNDER THE LANHAM ACT (15 U.S.C. §1125(a))

9  97.    Plaintiffs re-allege and incorporate by reference each and every

10  allegation set forth in Paragraphs 1 through 96 inclusive.

11  98.    Defendants, in connection with their credit-related services and

12  their FreeCreditReport.com website, used in commerce terms, symbols,

13  devices, false and misleading descriptions of fact, and false and misleading

14  representations of fact in commercial advertising or promotion, which

15  misrepresented the nature, characteristics, and qualities of Defendants'

16  goods, services, and commercial activities.

17  99.    Defendants, in connection with their credit-related services and

18  their FreeCreditReport.com website, used in commerce terms, symbols,

19  devices, false and misleading descriptions of fact, and false and misleading

20  representations of fact which were likely to cause  confusion, or to cause

21  mistake, or to deceive as to the affiliation, connection, or association of

22  Defendants with the United States government, or as to the origin,

23  sponsorship, or approval of Defendants' goods, services, or commercial

24  activities by the United States government.

25  100.    As a result of Defendants' misconduct, Plaintiffs have been

26  substantially harmed.

27  //

28  //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    101.    Defendants' conduct has been willful and wanton, and

2  undertaken for the specific purpose of deceiving consumers and obtaining a

3  competitive advantage in the credit-related services industry.

**PRAYER FOR RELIEF**

4

5    **WHEREFORE**, Plaintiffs pray that the Court enter a judgment against

6  Defendants:

7    1. That each Defendant has committed false advertising in violation of

8      the Lanham Act, 15 U.S.C. §1125(a).

9    2. That the Court order Defendants to pay Plaintiffs' damages as follows:

10      a. Defendants' profits under 15 U.S.C. §1117(a);

11      b. Plaintiffs' actual damages under 15 U.S.C. §1117(a);

12      c. Treble damages under 15 U.S.C. §1117(a);

13      d. Costs and reasonable attorneys' fees incurred by Plaintiffs under

14        15 U.S.C. §1117(a).

15    3. That the Court grant to Plaintiffs such additional relief as is just and

16      proper.

17

18  DATED:  January 12, 2010          KRONENBERGER BURGOYNE, LLP

19

20                      By: _____

21                            Karl S. Kronenberger

22                      Attorneys for Plaintiffs

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

**REQUEST FOR JURY TRIAL**

2  Plaintiffs hereby demand a trial of this action by jury.

3

4  DATED:  January 12, 2010        KRONENBERGER BURGOYNE, LLP

5

6                                 By: _____

7                                      Karl S. Kronenberger

8                                 Attorneys for Plaintiffs

9

10

11

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.                                      **COMPLAINT**

# Exhibit A

ORIGINAL

1 WILLIAM BLUMENTHAL
General Counsel

2
THOMAS J. SYTA, Bar # 116286
3 RAYMOND E. MCKOWN, Bar # 150975
JENNIFER M. BRENNAN, Bar # 225473
4 Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
5 Los Angeles, CA 90024
(310) 824-4343 (voice)
6 (310) 824-4380 (fax)
tsyta@ftc.gov
7 rmckown@ftc.gov
jmbrennan@ftc.gov
8
Attorneys for Plaintiff
9 Federal Trade Commission

10 ___ Docketed
___ Copies / NTC Sent
11 ___ JS - 5 / JS - 6
___ JS - 2 / JS - 3
12 ___ CLSD

FILED
CLERK, U.S. DISTRICT COURT

AUG 2 9 2005

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ___
Send X
Enter X
Closed ___
JS-5/JS-6 X
JS-2/JS-3 ___
Scan Only ___

LODGED

AUG 15 2005

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

13 FEDERAL TRADE COMMISSION,

14                   Plaintiff,

15      v.

16

17 CONSUMERINFO.COM., INC., a corporation,

18 doing business as

19 EXPERIAN CONSUMER DIRECT,
QSPACE, INC.,
20 and IPLACE INC.,

21

22                   Defendant.

SACV05-801 AHS(MLGx)

CV

**STIPULATED FINAL
JUDGMENT AND ORDER
FOR PERMANENT
INJUNCTION**

ENTERED

AUG 3 1 2005

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA OFFICE
BY _____ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

23

24      Plaintiff, Federal Trade Commission ("FTC" or "Commission") is

25 concurrently filing its Complaint, which alleges that Defendant Consumerinfo.com,

26 Inc., doing business as Experian Consumer Direct, Qspace, Inc., and Iplace, Inc.,

27

Page 1 of 41



1   has engaged in unfair or deceptive acts or practices in violation of Section 5 of the

2   FTC Act, 15 U.S.C. § 45, in connection with the marketing of consumer reports

3   and credit monitoring programs.  The parties have agreed to the entry of this

4   Stipulated Final Judgment and Order for Permanent Injunction ("Order") to resolve

5   all matters in dispute in this action without trial or adjudication of any issue of law

6   or fact herein and without Defendant admitting liability for any of the matters

7   alleged in the Complaint.  Defendant has waived service of the Summons and

8   Complaint.

9

10       **THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND**

11   **DECREED** as follows:

12                                                **FINDINGS**

13       1.      This Court has jurisdiction over the subject matter of this case and

14   over Defendant Consumerinfo.com, Inc. dba Experian Consumer Direct,  Qspace,

15   Inc. and Iplace, Inc.

16       2.      Venue in this district is proper under 28 U.S.C. § 1391(b) and (c), and

17   15 U.S.C. § 53(b).

18       3.      The acts and practices of Defendant are in or affecting commerce, as

19   "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

20       4.      The Complaint states claims upon which relief may be granted against

21   Defendant under Sections 5 and 13(b) of the FTC Act, 15 U.S.C.

22   §§ 45 and 53(b).

23       5.      Defendant makes no admissions as to the allegations in the Complaint,

24   other than the jurisdictional facts.

25       6.      Defendant waives: (a) all rights to seek appellate review or otherwise

26   challenge or contest the validity of this Order; (b) any claim Defendant may have

27

1 against the Commission, its employees, representatives, or agents that relate to the

2 matter stated herein; (c) all claims under the Equal Access to Justice Act, 28 U.S.C.

3 § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996); and (d) any

4 rights to attorneys' fees that may arise under said provision of law.

5       7.     Entry of this Order is in the public interest.

6

7 **DEFINITIONS**

8     For purposes of this Order, the following definitions shall apply:

9     1.     "Assisting Others" means knowingly formulating or providing, or

10 arranging for the formulation or provision of, any marketing materials.

11     2.     "Billing Information" means any data that enables any person to

12 access a customer's account, such as a credit card, checking, savings, share or

13 similar account, utility bill, mortgage loan account, or debit card.

14     3.     "Clearly and Conspicuously" means:

15         a.     in print communications, the message shall be in a type size and

16 location sufficiently noticeable for an ordinary consumer to read and comprehend

17 it, in print that contrasts with the background against which it appears;

18         b.     in communications disseminated orally, the message shall be

19 delivered in a volume and cadence sufficient for an ordinary consumer to hear and

20 comprehend it;

21         c.     in communications made through an electronic medium (such as

22 television, video, radio, and interactive media such as the Internet, online services

23 and software), the message shall be presented simultaneously in both the audio and

24 visual portions of the communication. In any communication presented solely

25 through visual or audio means, the message may be made through the same means

26 in which the communication is presented. Any audio message shall be delivered in

27

1  a volume and cadence sufficient for an ordinary consumer to hear and comprehend

2  it. Any visual message shall be of a size and shade, with a degree of contrast to the

3  background against which it appears and shall appear on the screen for a duration

4  and in a location, sufficiently noticeable for an ordinary consumer to read and

5  comprehend it; and

6          d.    regardless of the medium used to disseminate it, the message

7  shall be in understandable language and syntax. Nothing contrary to, inconsistent

8  with, or in mitigation of the message shall be used in any communication.

9      4.    In the case of advertisements disseminated by means of an interactive

10  electronic medium such as software, the Internet, or online services, "in close

11  proximity" shall mean on the same webpage, online service page, or other

12  electronic page, and proximate to the triggering representation, and shall not

13  include disclosures accessed or displayed through hyperlinks, pop-ups, interstitials,

14  or other means.

15      5.    "Consumer Report" is synonymous in meaning and equal in scope to

16  the usage of the term as it is defined in Section 603(d) of the Fair Credit Reporting

17  Act, 15 U.S.C. § 1681a(d).

18      6.    "Credit Report" means a consumer report that is used or expected to

19  be used or collected in whole or in part for the purpose of serving as a factor in

20  establishing the consumer's eligibility for creditworthiness.

21      7.    "Credit Monitoring Program" means a program that enables a

22  consumer to access information related to substantive changes in his or her credit

23  history as recorded in his or her consumer report.

24      8.    "Defendant" means Consumerinfo.com, Inc. doing business as

25  Experian Consumer Direct, Qspace, Inc., and Iplace, Inc.

26      9.    "Document" is synonymous in meaning and equal in scope to the

27

1  usage of the term in Federal Rules of Civil Procedure 34(a), and includes writings,

2  drawings, graphs, charts, photographs, audio, and video recordings, computer

3  records, and other data compilations from which the information can be obtained

4  and translated, if necessary, through detection devices into reasonably usable form.

5  A draft or non-identical copy is a separate document within the meaning of the

6  term.

7      10.    "Free Credit Report/Credit Check Monitoring" (or, "CCM") means a

8  promotion offered by Consumerinfo.com, Inc., regardless of the name under which

9  the promotion was offered, wherein a consumer received a free credit report in

10 conjunction with enrollment on a trial conversion basis in a credit monitoring

11 program.

12     11.    "Full and Complete Refund" means a refund of any unrefunded

13 amount paid for the Free Credit Report/Credit Check Monitoring in the 12-month

14 membership period in which the cancellation took place, or the request for refund

15 or chargeback, or complaint about the charge, was made.  No consumer shall

16 receive a refund of more than the unrefunded amount paid in a single twelve-month

17 membership period.

18     12.    "Marketing Partner" means any third party with which Defendant has

19 an agreement under which Defendant agrees to provide order fulfillment services to

20 that third party in conjunction with that third party's advertising, promotion, offer,

21 or sale of any program in which the consumer receives a free credit report and is

22 enrolled in a credit monitoring program on a trial conversion basis and under which

23 Defendant does not have authority to control such advertising, promotion, offer, or

24 sale.

25     13.    "Material" when used in reference to the sale of goods or services

26 means likely to affect a person's choice of, or conduct regarding, goods or services.

27

14. A "Negative Option" offer or agreement is one to sell or provide goods or services under which: (a) a consumer must take an affirmative step to reject goods or services or cancel the agreement, and (b) the consumer's silence or failure to reject goods or services or to cancel the agreement would ordinarily be interpreted by the seller or provider as acceptance or continuing acceptance of the goods or services. Negative option offers or agreements include but are not limited to "Trial Conversion" offers, which are characterized by an offer of free products or services or a free trial period of products or services to consumers where, as a result of accepting the free products or services or the free trial period of products or services, consumers would ordinarily be required to contact Defendant to avoid receiving additional products or services and incurring a financial obligation for such additional products or services.

15. "Short-form advertisement" means any television or radio advertisement of less than sixty (60) seconds duration, Internet banner advertisement, or Internet pop-up advertisement.

## ORDER

## I.  PROHIBITED BUSINESS ACTIVITIES

**IT IS ORDERED** that Defendant and Defendant's successors, assigns, officers, agents, and all other persons or entities within the scope of Fed. R. Civ. P. 65, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, including all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of consumer reports, credit scores, credit monitoring programs, or any other product, program, or service relating to consumer reports, are hereby permanently restrained and

1 enjoined from:

2     A.    Misrepresenting, or assisting others in misrepresenting, expressly or

3 by implication, that consumers can obtain a free product, program, or service, a free

4 trial membership, or any such product, program, or service at no cost or obligation.

5     B.    Misrepresenting, or assisting others in misrepresenting, expressly or

6 by implication:

7         1.    the amount of any charge, bill, or fee, including but not limited

8 to, the cost of any consumer report or credit monitoring program;

9         2.    that a consumer will not be charged, billed, or assessed a fee;

10         3.    the timing or manner of any charge, bill, or fee assessment;

11         4.    that a consumer is legally obligated to pay a charge, bill, or fee

12 assessment; or

13         5.    that a consumer will not be charged, billed, or assessed a fee

14 without the consumer's authorization.

15     C.    Failing to make the following disclosures, clearly and conspicuously,

16 in conjunction with the advertising, promotion, or sale of any offer, other than a

17 promotion through a marketing partner, in which the consumer receives a free

18 credit report and is enrolled in a credit monitoring program on a trial conversion

19 basis:

20         1.    At least once in any short-form advertisement, Defendant shall

21 include the following disclosure, or words of similar import, in close proximity to

22 the free credit report representation:

23

24         "with enrollment in [name of credit monitoring program]"

25

26         2.    At least once in any other radio or television advertisement,

27

1    Defendant shall include the following disclosures:

2

3              When you order your free report, you will begin your free

4              trial membership in [name of credit monitoring program].

5              If you don't cancel within the 30 day [or other period]

6              trial period, you will be billed $12 [or other amount] for

7              each month [or other billing period] that you continue

8              your membership.

9

10             This offer is not related to the free credit report that you may be

11             entitled to under Federal law.  To obtain that free report, you must go

12             to www.annualcreditreport.com.

13

14   Provided that, in any radio or television advertisement longer than five (5) minutes

15   in duration, the disclosures required by this Subparagraph I.C.2. shall be made, at

16   Defendant's option, either immediately before each presentation of ordering

17   instructions, or at least once every five (5) minutes.

18

19             3.     In any other advertisement, and on any website or in any other

20   medium, including but not limited to telephone, email, or direct mail, in which a

21   consumer is able to enroll in the credit monitoring program, Defendant shall

22   include the following disclosures:

23             a.     on the landing page of the website or at the first point of

24             communication:

25

26             **IMPORTANT INFORMATION**

27

1      When you order your free report here, you

2      will begin your free trial membership in

3      [name of credit monitoring program].  If you

4      don't cancel your membership within the 30

5      day [or other period] trial period, you will be

6      billed $12 [or other amount] for each month

7      [or other billing period] that you continue

8      your membership.  Under a new Federal law,

9      you may have the right to receive a free copy

10      of your credit report once every 12 months

11      from each of the three nationwide consumer

12      reporting companies.  To request your free

13      annual report under that law, you must go to

14      www.annualcreditreport.com. [Name of

15      offering company] is not affiliated with the

16      annual free credit report program.

17

18      The reference to www.annualcreditreport.com shall be formatted to appear in

19  a blue color and underscored and shall be an active hyperlink such that a consumer

20  clicking on that hyperlink will be directed to that website.  After September 1,

21  2005, the word "may" shall be deleted from the third sentence of the disclosure

22  required by this Subparagraph I.C.3.a.

23      The disclosure required by this Subparagraph I.C.3.a. shall be made in a

24  prominent location and in close proximity to the free credit report representation

25  and distinct from other text, such as inside a border; and

26          b.      clearly and conspicuously, and not pursuant to a link, at a

27

1      location between the landing page and the location where a

2      consumer submits an order:

3

4      "This offer is not related to the free credit report that you may

5      be entitled to under Federal law.  To obtain that free report, you

6      must go to www.annualcreditreport.com."

7

8    After September 1, 2005, the word "are" shall be substituted for the words

9 "may be" in the first sentence of the disclosure required by this Subparagraph

10 I.C.3.b.; and

11

12      c.  at the location or time that immediately precedes the point

13      at which the consumer completes the transaction, under the

14      heading **"PAYMENT INFORMATION"** in capital letters and

15      bold print, the following disclosure, or words of similar import::

16      "When you order your free report here, you will

17      begin your free trial membership in [name of credit

18      monitoring program].  If you don't cancel your

19      membership within the 30 day [or other period]

20      trial period, you will be billed $12 [or other

21      amount] for each month [or other billing period]

22      that you continue your membership."

23

24    All written or printed disclosures required by this Subparagraph I.C.3. shall

25 be in a type size that is no smaller than the type size of the principal text on the

26 page, but in no event smaller than 12-point type.

27

1    4.  On a website or in any other medium in which a consumer is

2 able to enroll in the credit monitoring program, Defendant shall disclose:

3      a. all material terms and conditions of any cancellation or

4       refund policy, or if Defendant has a policy of not accepting

5       cancellations or making refunds, a statement that this is

6       Defendant's policy.  The disclosure required by this

7       Subparagraph I.C.4.a. shall be made in the **"PAYMENT**

8       **INFORMATION**" section referred to in Subparagraph I.C.3.c.;

9       and

10      b. any other material terms or conditions of the offer.  The

11       disclosure required by this Subparagraph I.C.4.b. shall be made

12       in conformance with Subparagraphs I.D. and I.F.

13   D.  Representing, or assisting others in representing, expressly or by

14 implication, that any such product, program, or service is "free" or is available

15 without cost or obligation, unless Defendant discloses, clearly and conspicuously,

16 and in close proximity to the representation, all fees, costs, obligations or other

17 material terms or conditions associated with the offer, including the material terms

18 of any negative option offer.  Provided that, for the purposes of any offer covered

19 by Subparagraph I.C., compliance with that Subparagraph shall be deemed to be

20 compliance with this Subparagraph I.D.

21   E.  In conjunction with a promotion through a marketing partner in which

22 the consumer receives a free credit report and a credit monitoring program on a

23 trial conversion basis, failing to make the following disclosures:

24    1. the disclosure required under Subparagraph I.C.3.c.,

25 or words of similar import, which shall be made, clearly and conspicuously, (a) in

26 the **"Payment Information"** section on the ordering page referred to in

27

1  Subparagraph I.C.3.c., and (b) either in the promotional offer made by the

2  marketing partner or at the first point of contact between Defendant and the

3  consumer; and

4          2.      the disclosure required under Subparagraph I.C.3.b.,

5  or words of similar import, which shall be made, clearly and conspicuously, either

6  in the promotional offer made by the marketing partner or at the first point of

7  contact between Defendant and the consumer.  After September 1, 2005, the word

8  "are"  shall be substituted for the words "may be" in the first sentence of this

9  disclosure.

10     F.      Failing to disclose, clearly and conspicuously, before consumers are

11  asked to pay money, reveal billing information, or submit consideration, or before

12  any charge is incurred, all material terms and conditions of a negative option offer,

13  which include but are not limited to the following:

14          1.      the fact that the customer's account will be charged, billed, or

15  assessed a fee unless the customer takes affirmative action to avoid the charge, bill,

16  or fee assessment;

17          2.      when the charge, bill, or fee assessment will be submitted for

18  payment;

19          3.      the specific steps the customer must take to avoid the charge,

20  bill, or fee assessment;

21          4.      all material terms and conditions of a guarantee, refund, or

22  return policy, or if Defendant has a policy of not making refunds or accepting

23  returns, a statement that this is Defendant's policy;

24          5.      the fact that periodic shipments of products or the periodic

25  provision or the continuation of services will occur without further action by

26  consumers;

27

1        6.    if products are provided in shipments or services provided on a

2 periodic basis, a description of each good or type of good to be included in each

3 shipment or a description of the services that will be performed or continued;

4        7.    if products are shipped or services provided on a periodic basis,

5 the approximate interval between each shipment or service period or the number of

6 shipments or service periods per year;

7        8.    the cost or range of costs for each shipment or service period,

8 including shipping and handling costs; and

9        9.    the minimum number of purchases or minimum service period

10 required by Defendant, if any.

11 <u>Provided that</u>, for the purposes of any offer covered by Subparagraph I.C.,

12 compliance with that Subparagraph shall be deemed to be compliance with this

13 Subparagraph I.F.

14      G.    Causing billing information to be submitted for payment, directly or

15 indirectly, for any such product, program, or service advertised, promoted, offered

16 for sale, or sold as part of an offer or agreement involving a negative option offer,

17 without obtaining the express informed consent of consumers to be charged for any

18 such product, program, or service using an account identified with sufficient

19 specificity for consumers to understand what account will be charged, billed, or

20 assessed a fee.  To evidence consumers' express informed consent, Defendant must

21 disclose, clearly and conspicuously, before consumers pay money, reveal billing

22 information, or submit consideration, all material terms and conditions of the offer

23 or agreement (including but not limited to those stated in Subparagraph I.F.), and

24 obtain consumers' express agreement to be charged.

25      H.    Failing to honor a request that Defendant receives to cancel any sale or

26 transaction involving a negative option offer, or to provide a refund in accordance

27

1  with Defendant's disclosed policies.

## II.  CONSUMER REDRESS

**IT IS FURTHER ORDERED** that:

A.    Defendant shall pay an amount sufficient to provide a full and complete refund to any consumer who meets the following qualifications:

1.    The consumer was enrolled in the Free Credit Report/Credit Check Monitoring ("CCM") during the period November 1, 2000, through September 15, 2003 and was assessed a charge; and either:

a.    within the first three years of the consumer's membership in CCM cancelled such membership and received a pro-rata refund; or

b.    prior to entry of this Order, contacted, directly or indirectly, Defendant, the Commission, the Better Business Bureau of the Southland (Colton, California), any credit or debit card issuer, or any other third party to request a refund or chargeback of the charge, or to register a complaint about the charge, for the CCM offer.

2.    To identify all consumers who meet the qualifications of this Subparagraph II.A. for receiving a refund, Defendant shall review the following internal customer records as of June 20, 2005: (a) records of pro-rated refunds paid to consumers who cancelled their membership within the first three (3) years of membership; and (b) records that identify consumers in one or more of the following customer service categories: (i) "billing - questioning charge," (ii) "billing - general question," (iii) "possible credit card fraud," or (iv) "possible identity theft." Defendant also shall review any information it has received from

1  the Commission, the Better Business Bureau of the Southland (Colton, California),

2  any credit or debit card issuer, or any other third party.  In addition, Defendant shall

3  provide a full and complete refund to any consumer if such consumer, within two

4  hundred and fifty-five (255) days after entry of this Order, produces documentation

5  sufficient to show that he or she meets the qualifications of this Subparagraph II.A.

6  Defendant shall make such refund within thirty (30) days after receiving the

7  consumer's documentation.

8      B.      Defendant shall make refund payments to consumers who meet the

9  qualifications set forth in Subparagraph II.A. in the following manner:

10          1.      Within sixty (60) days after entry of this Order, Defendant shall

11  attempt to obtain a credit for each such consumer on the consumer's credit or debit

12  card account that was used to enroll in the CCM promotion.  Defendant shall send

13  a notice in the form set forth in Attachment A to each consumer for whom it has

14  obtained such a credit.  Defendant shall send such notice by email to the

15  consumer's last known email address, or by first class mail to the consumer's last

16  known address.  No other information shall be included or added to the notice.

17          2.      In the event that Defendant, despite reasonable efforts, is unable

18  to procure a credit on a consumer's credit or debit card account that was used to

19  enroll in the CCM promotion from the card issuer, Defendant shall deliver by

20  email, within thirty (30) days after the attempt to credit the consumer's account, or

21  ninety (90) days after entry of this Order, whichever is later, a Notice of Refund in

22  the form set forth in Attachment B to the last known email address of the

23  consumer.  No other information shall be included or added to the notice.  The

24  subject line of the email shall state: "Important: Notice of Refund for Credit

25  Monitoring."  Defendant shall procure and utilize software technology sufficient to

26  establish whether the consumer has opened the email notice.

27

1          3.      In the event that Defendant, despite reasonable efforts: (a) is

2    unable to provide a refund to a consumer as set forth in Subparagraph II.B.1., and

3    (b) is unable to provide an email notice or to demonstrate that the consumer opened

4    the email notice within thirty (30) days of sending the email notice to the

5    consumer, as set forth in Subparagraph II.B.2., Defendant shall mail a Notice of

6    Refund in the form set forth in Attachment C via first-class mail, postage prepaid,

7    to the last known address of the consumer.  Defendant shall mail such notice within

8    thirty (30) days of the last date on which a consumer may have opened the email

9    message as provided above, or one hundred and sixty five (165) days, after the

10   entry of this order, whichever is later.  The envelope enclosing the Notice of

11   Refund shall be in the form set forth in Attachment D.  No other information shall

12   be included or added to the mailing.  Defendant shall also retain a National Change

13   of Address System ("NCOA") licensee to update consumers' last known addresses

14   by processing them through the NCOA database.  For each mailing returned by the

15   U.S. Postal Service as undeliverable for which Defendant obtains a corrected

16   address, Defendant shall, within fifteen (15) business days after receiving the

17   corrected address, send the Notice of Refund to the corrected address.

18          4.      Defendant shall provide a refund to each consumer who, within

19   two hundred and fifty five (255) days after entry of this Order, or within thirty (30)

20   days of receiving a notice, whichever is sooner, requests a refund in response to a

21   notice provided by the means set forth in Subparagraphs II.B.2. or II.B.3., and who

22   produces documentation sufficient to show that he or she meets the qualifications

23   of Subparagraph II.A.  Within fifteen (15) days after receiving a request for refund

24   within the time period provided in the notice, Defendant shall provide refunds by

25   mailing a check via first class mail, postage prepaid, or by crediting the consumer's

26   credit or debit card account, at the consumer's option.  Defendant shall enclose

27

1  each refund check in an envelope that displays on its front, clearly and

2  conspicuously, the words "REFUND CHECK ENCLOSED." No other information

3  shall be included or added to the mailing, except that Defendant may provide

4  explanatory information relating to the refund.

5        C.    Defendant shall offer the right to cancel membership and receive a

6  pro-rated refund of the current membership period fee to each consumer who was

7  enrolled in the CCM promotion between November 1, 2000 and September 15,

8  2003, and is still enrolled as of the date of entry of this Order. Defendant shall

9  provide this right in the following manner:

10          1.    Within thirty (30) days after entry of this Order, Defendant shall

11  deliver a Notice of Right to Cancel in the form set forth in Attachment E by email

12  to the last known email address of the consumer. No other information shall be

13  included or added to the notice. The subject line of the email shall state:

14  "Important: Notice of Right to Cancel Credit Monitoring." Defendant shall procure

15  and utilize software technology sufficient to establish whether the consumer has

16  opened the email notice within thirty days.

17          2.    In the event that Defendant, despite reasonable efforts, is unable

18  to provide an email notice or to demonstrate that the consumer opened the email

19  notice within thirty (30) days of sending the email notice to the consumer, as set

20  forth in Subparagraph II.C.1., Defendant shall mail a Notice of Right to Cancel in

21  the form set forth in Attachment F via first-class mail, postage prepaid, to the last

22  known address of the consumer. Defendant shall mail such notice within fifteen

23  (15) days of the last date on which a consumer may have opened the email message

24  as provided above, or one hundred and thirty-five (135) days after the entry of this

25  order, whichever is later. The envelope enclosing the Notice of Right to Cancel

26  shall be in the form set forth in Attachment G. No other information shall be

27

1  included or added to the mailing. Defendant shall also retain a National Change of

2  Address System ("NCOA") licensee to update consumers' last known addresses by

3  processing them through the NCOA database. For each mailing returned by the

4  U.S. Postal Service as undeliverable for which Defendant obtain a corrected

5  address, Defendant shall, within fifteen (15) business days after receiving the

6  corrected address, send the Notice of Right to Cancel to the corrected address.

7          3.       Defendant shall cancel the CCM membership, provide a

8  pro-rated refund (calculated on a daily basis) for the cancelled portion of the

9  membership, and refrain from charging any account, billing, or otherwise

10  collecting or attempting to collect any payment, for each consumer who, within

11  one hundred twenty (120) days after entry of this Order, or within thirty (30) days

12  after receiving the Notice of Right to Cancel, whichever is later, requests

13  termination of his or her membership, in any manner, in response to a Notice of

14  Right to Cancel, or who otherwise demonstrates that he or she is eligible to cancel

15  his or her membership. Within fifteen (15) days after receiving a request for

16  refund, Defendant shall provide the refund by mailing a check via first class mail,

17  postage prepaid, or by crediting the consumer's credit or debit card account, at the

18  consumer's option. Defendant shall enclose each refund check in an envelope that

19  displays on its front, clearly and conspicuously, the words "REFUND CHECK

20  ENCLOSED." No other information shall be included or added to the mailing,

21  except that Defendant may provide explanatory information relating to the refund.

22          D.      For a period of two hundred and fifty five (255) days from the date of

23  entry of this Order, Defendant shall provide and adequately staff during ordinary

24  business hours, a toll-free telephone number to answer questions, provide

25  information, and accept requests for termination of membership and/or refunds

26  pursuant to this Order. Defendant shall also provide an email address at which

27

1   consumers can ask questions, request information and request termination of

2   membership and/or refunds pursuant to this Order. Defendant shall send an

3   automated reply message to each consumer who sends an email to that email

4   address acknowledging receipt of the email and stating that Defendant will respond

5   to each question and request received at such email address within two (2) business

6   days of receipt. Defendant shall respond to each question and request received at

7   such email address within two (2) business days of receipt.

8       E.      The accounts upon which any refund checks are drawn shall remain

9   open for at least ninety (90) days after Defendant sends such refund checks.

10      F.      Within ten (10) business days after entry of this Order, Defendant shall

11  pay nine hundred and fifty thousand dollars ($950,000) to the Commission. In

12  addition, in the event that any refund checks issued pursuant to this Subparagraph

13  II. remain uncashed ninety (90) days after Defendant sends such refund checks, or

14  two hundred ten (210) days after entry of this Order, whichever is later, Defendant

15  shall pay to the Commission the amount of those uncashed checks. The

16  Commission may apply the funds paid pursuant to this Subparagraph II.F. for such

17  other equitable relief (including additional consumer restitution and consumer

18  information remedies) as it determines to be reasonably related to Defendant's

19  practices as alleged in the Complaint. Any funds not used for such equitable relief

20  will be deposited with the United States Treasury as disgorgement. Defendant

21  shall have no right to challenge the Commission's choice of remedies under this

22  Subparagraph II.F. No portion of any payments under this Order shall be deemed a

23  payment of any fine, penalty, or punitive assessment.

24      G.      Within two hundred and seventy (270) days after entry of this Order,

25  Defendant shall furnish to the Commission the following:

26          1.      the total number of:

27

1        a.     consumers whose credit or debit card account was

2               credited pursuant to Subparagraph II.B.1., and the date

3               issued and amount of each credit;

4        b.     consumers who were sent a Notice of Refund by email

5               pursuant to Subparagraph II.B.2.;

6        c.     consumers who failed to open the emailed Notice of

7               Refund;

8        d.     consumers who were sent a Notice of Refund by

9               first-class mail pursuant to Subparagraph II.B.3.;

10       e.     consumers who were sent a refund check pursuant to

11              Subparagraph II.B.4., and the amount, check number, and

12              mailing date of each check;

13       f.     consumers who cashed, deposited, or otherwise redeemed

14              their refund checks;

15       g.     consumers who were sent a Notice of Right to Cancel by

16              email pursuant to Subparagraph II.C.1.;

17       h.     consumers who failed to open the emailed Notice of

18              Right to Cancel;

19       i.     consumers who were sent a Notice of Right to Cancel by

20              first-class mail pursuant to Subparagraph II.C.2.;

21       j.     consumers who requested termination of their

22              membership in the CCM;

23       k.     consumers whose credit or debit card account was

24              credited with a pro-rated refund pursuant to Subparagraph

25              II.C., and the date issued and amount of each credit;

26       l.     consumers who were sent a pro-rated refund check

27

1                         pursuant to Subparagraph II.C., and the amount, check

2                         number, and mailing date of each check;

3          m.     consumers who cashed, deposited, or otherwise redeemed

4                         their pro-rated refund checks; and

5          n.      "undeliverable" notices mailed to consumers pursuant to

6                         this order and returned to Defendant.

7    2.      Defendant shall provide on request from the Commission, within ten

8 (10) business days, in computer readable form and in computer print-out form:

9          a.      the identity of any consumer that is included in Subparagraph

10                         II.G.1;

11          b.      all other documents and records evidencing efforts made and

12                         actions taken by Defendant to identify, locate, contact, and

13                         provide refunds to persons eligible to receive refunds pursuant

14                         to Subparagraph II.A. and II.B; and

15          c.      all other documents and records evidencing efforts made and

16                         actions taken by Defendant to identify, locate, contact, and

17                         provide refunds to persons eligible to cancel their membership

18                         pursuant to Subparagraph II.C;

19    H.     Defendant may destroy all records relating to the distribution of this

20 consumer redress six (6) years after the last of the funds are credited, delivered to

21 the Commission, or delivered to the FTC Treasury account, provided that, no

22 records shall be destroyed unless and until a representative of the Commission has

23 received and approved the final accounting report pertaining to Defendant's

24 payment.  Records shall be destroyed in accordance with disposal methods and

25 procedures to be specified by the Commission.  The Commission may, in its sole

26 discretion, require that such records, in whole or in part, be transferred, in lieu of

27

1 destruction, to the Commission.

2

3 ## III.   RELIANCE ON DISCLOSURES

4 **IT IS FURTHER ORDERED** that:

5 A.   The Commission's agreement to this Order is expressly premised upon

6 the truthfulness, accuracy, and completeness of the consumer complaint, refund,

7 purchase data, and other information provided by Defendant and dated June 24,

8 2005.  Such data constitute material information relied upon by the Commission in

9 negotiating and agreeing to the terms of this Order.

10 B.   If, upon motion by the Commission, this Court finds that Defendant

11 made any material misrepresentation in or omitted material information from the

12 data provided, this matter shall be reopened to allow Plaintiff to show that

13 additional relief, including but not limited to additional equitable monetary relief,

14 consumer restitution, or disgorgement of ill-gotten gains should be entered against

15 Defendant.  Plaintiff shall have the right to engage in reasonable discovery for this

16 purpose.  Upon a sufficient showing by Plaintiff, the Court shall enter a revised

17 Order against Defendant, which will become immediately due and payable, in

18 addition to such other ancillary relief the Court deems proper.

19 C.   In the event this matter is reopened pursuant to this Paragraph III,

20 Defendant shall have no right to seek modification or abrogation of this Order, and

21 all other Paragraphs of this agreement and Order shall remain in full force and

22 effect unless otherwise ordered by this Court.

23 D.   Any proceedings instituted under this Paragraph III are in addition to,

24 and not in lieu of, any other civil or criminal remedies as may be provided by law,

25 including any other proceedings that the FTC may initiate to enforce this Order.

26 E.   For purposes of this Paragraph III and any subsequent proceedings to

27

1  enforce payment, including but not limited to a non-dischargeability complaint

2  filed in a bankruptcy proceeding, Defendant waives any right to contest any of the

3  allegations in the Commission's Complaint.

4

5  ## IV.   COMPLIANCE MONITORING

6  **IT IS FURTHER ORDERED** that, for the purpose of monitoring and

7  investigating compliance with any provision of this Order,

8  A.   Within fifteen (15) days of receipt of written notice from a

9  representative of the Commission, Defendant shall submit additional written

10 reports, sworn to under penalty of perjury; produce documents for inspection and

11 copying; appear for deposition; and/or provide entry during normal business hours

12 to any business location in Defendant's possession or direct or indirect control, to

13 inspect the business operation.

14 B.   In addition, the Commission is authorized to monitor compliance with

15 this Order by all other lawful means, including but not limited to the following:

16 1.   obtaining discovery from any person, without further leave of

17 Court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and

18 45.

19 2.   posing as consumers and suppliers to Defendant, Defendant's

20 employees, or any other entity managed or controlled in whole or in part by

21 Defendant, without the necessity of identification or prior notice.

22 C.   Defendant shall permit representatives of the Commission to interview

23 any employer, consultant, independent contractor, representative, agent, or

24 employee who has agreed to such an interview, relating in any way to any conduct

25 subject to this Order.  The person interviewed may have counsel present.

26 Provided that nothing in this Order shall limit the Commission's lawful use

27

1  of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§

2  49, 57b-1, to obtain any documentary material, tangible things, testimony, or

3  information relevant to unfair or deceptive acts or practices in or affecting

4  commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

5

6         **V.   COMPLIANCE REPORTING BY DEFENDANT**

7       **IT IS FURTHER ORDERED** that, in order that compliance with the

8  provisions of this Order may be monitored:

9       A.     For a period of three (3) years from the date of entry of this Order,

10  Defendant shall notify the Commission of any changes in corporate structure that

11  may affect compliance obligations arising under this Order, including but not

12  limited to a dissolution, assignment, sale, merger, or other action that would result

13  in the emergence of a successor entity; the creation or dissolution of a subsidiary,

14  parent, or affiliate that engages in any acts or practices that are subject to this

15  Order; the filing of a bankruptcy petition; or a change in the corporate name or

16  address, at least thirty (30) days prior to such change, <u>provided that</u>, with respect to

17  any proposed change in the corporation about which Defendant learns less than

18  thirty (30) days prior to the date such action is to take place, Defendant shall notify

19  the Commission as soon as is practicable after obtaining such knowledge.

20       B.     Three hundred (300) days after the date of entry of this Order,

21  Defendant shall provide a written report to the FTC, sworn to under penalty of

22  perjury, setting forth in detail the manner and form in which it has complied and is

23  complying with this Order.  This report shall include, but not be limited to:

24           1.     any changes required to be reported pursuant to Subparagraph

25  V.A.

26           2.     a copy of each acknowledgment of receipt of this Order

27

1 obtained pursuant to Paragraph VII.

2         3.    the total amount of consumer restitution paid to Consumerinfo

3 customers under Paragraph II.

4     C.    For the purposes of this Order, Defendant shall, unless otherwise

5 directed by the Commission's authorized representatives, mail all written

6 notifications to the Commission to:

7         Western Region, Federal Trade Commission
        10877 Wilshire Boulevard, Suite 700

8         Los Angeles, California 90024
        RE: FTC v. Consumerinfo.com, Inc.

9

10     D.    For purposes of the compliance reporting and monitoring required by

11 this Order, the Commission is authorized to communicate directly with Defendant.

12

13                   **VI.   RECORD KEEPING**

14     **IT IS FURTHER ORDERED** that, for a period of six (6) years from the

15 date of entry of this Order, in connection with any business where Defendant is the

16 majority owner of the business or directly or indirectly manages or controls the

17 business, Defendant and its agents, employees, officers, corporations, successors,

18 and assigns, and those persons in active concert or participation with them who

19 receive actual notice of this Order by personal service or otherwise, are hereby

20 restrained and enjoined from failing to create and retain the following records:

21     A.    Accounting records that reflect the cost of goods or services sold,

22 revenues generated, and the disbursement of such revenues.

23     B.    Personnel records accurately reflecting: the name, address, and

24 telephone number of each person employed in any capacity by such business; that

25 person's job title or position; the date upon which the person commenced work; and

26 the date and reason for the person's termination, if applicable.

27

1       C.    Customer files containing the names, addresses, phone numbers, dollar

2 amounts paid, quantity of items or services purchased, and description of items or

3 services purchased, to the extent such information is obtained in the ordinary

4 course of business.

5       D.    Complaints and refund requests (whether received directly, indirectly

6 or through any third party) and any responses to those complaints or requests.

7       E.    Copies of all sales scripts, training materials, advertisements, or other

8 marketing materials.

9       F.    All records and documents necessary to demonstrate full compliance

10 with each provision of this Order, including but not limited to, copies of

11 acknowledgments of receipt of this Order, required by Paragraphs VII and VIII,

12 and all reports submitted to the FTC pursuant to Paragraphs II and V.

13

14       **VII.   DISTRIBUTION OF ORDER BY DEFENDANT**

15       **IT IS FURTHER ORDERED** that, for a period of three (3) years from the

16 date of entry of this Order, Defendant shall deliver copies of this Order as directed

17 below:

18       A.    Defendant shall deliver a copy of this Order to all of its principals,

19 officers, and directors, and to all managers who have responsibility directly or

20 indirectly for any matters covered by this Order.  Defendant also shall deliver an

21 accurate summary of this Order to all of its employees who are engaged in conduct

22 related to the advertising, marketing, sale, or delivery of, or who respond to

23 consumer complaints or inquiries regarding consumer reports, credit scores, or any

24 credit monitoring program.  For current personnel, delivery shall be within five (5)

25 days of service of this Order upon Defendant.  For new personnel, delivery shall

26 occur prior to them assuming their responsibilities.

27

1    B.    Defendant must secure a signed and dated statement acknowledging

2    receipt of this Order, within thirty (30) days of delivery, from all persons receiving

3    a copy of the Order pursuant to this Paragraph VII.

4

5    ## VIII.   ACKNOWLEDGMENT OF RECEIPT OF ORDER

6    ## BY DEFENDANT

7        IT IS FURTHER ORDERED that Defendant, within five (5) business days

8    of receipt of this Order as entered by the Court, must submit to the Commission a

9    truthful sworn statement acknowledging receipt of this Order, in the form shown on

10   Attachment H.

11

12   ## IX.    RETENTION OF JURISDICTION

13       **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

14   matter for purposes of construction, modification, and enforcement of this Order.

15

16   ## X.    COSTS AND ATTORNEYS' FEES

17       **IT IS FURTHER ORDERED** that each party shall bear its own costs and

18   attorneys fees incurred in connection with this action.

19

20   ## XI.    NOTICE OF ENTRY OF ORDER

21       **IT IS FURTHER ORDERED** that entry in the docket of this Order by the

22   Clerk of Court shall constitute notice to Defendant of the terms and conditions of

23   this Order, and that Defendant waives all rights to contest in any future proceeding

24   whether Defendant was properly served with this Order.

25

26       The parties hereby stipulate to the entry of the foregoing Order, which shall

constitute a final Order in this action.

27

**IT IS SO ORDERED**

Dated __AUG 2 9 2005__

Page 27 of 41



United States District Judge

**IT IS SO ORDERED:**

Dated this _____ day of _____, 2005.


_____
United States District Judge

**STIPULATED BY:**

_Thomas J. Syta_

Thomas J. Syta, Esq.

Raymond E. McKown, Esq.

Jennifer M. Brennan, Esq.

Attorneys for Plaintiff

Federal Trade Commission


_Edward S. Ojdana_

Consumerinfo.com dba Experian

Consumer Direct, Qspace, Inc., and

Iplace, Inc.

by: Edward S. Ojdana

Chief Executive Officer


_Richard Grabowski_

by: Richard Grabowski, Esq.

Attorney for the Defendant

Jones Day

3 Park Plaza, Suite 1100

Irvine, California 92614-8505


_Anne P. Fortney_

by:  Anne P. Fortney, Esq.

Attorney for the Defendant

Hudson Cook, LLP

1900 M Street, N.W., Suite 700

Washington, D.C. 20036

# ATTACHMENT A

## NOTICE OF CREDITING OF ACCOUNT

Dear [NAME]:

Our records show that you received a free credit report from Consumerinfo.com or Freecreditreport.com sometime between November 1, 2000 and September 15, 2003.

Our free credit report promotion came with a 30-day trial membership in our [name of credit monitoring program] credit monitoring program. After 30 days, unless you cancelled, we automatically enrolled you in the credit monitoring program at an annual fee of $79.95. The Federal Trade Commission (FTC) has alleged that we did not make clear to consumers that they needed to cancel the trial membership to avoid being charged.

According to our records, you either cancelled your credit monitoring program membership or questioned the billing for the credit monitoring program, but didn't receive a full refund. Although we disagree with the FTC's charges, we also want satisfied customers. Therefore, we have reached an agreement with the FTC to pay full refunds to customers like you. We have credited your [credit] [debit] card account in the amount of the annual fee for the applicable year, less any amount you may have already received. Your credit should appear on your card statement shortly.

If you have any questions, please send an e-mail to _____. We will respond within two business days.

Sincerely,

Consumerinfo.com, Inc.

**ATTACHMENT B**
**NOTICE OF REFUND**

Dear [NAME]:

Our records show that you received a free credit report from Consumerinfo.com or Freecreditreport.com sometime between November 1, 2000 and September 15, 2003.

Our free credit report promotion came with a 30-day trial membership in our [name of credit monitoring program] credit monitoring program. After 30 days, unless you cancelled, we automatically enrolled you in the credit monitoring program at an annual fee of $79.95. The Federal Trade Commission (FTC) has alleged that we did not make clear to consumers that they needed to cancel the trial membership to avoid being charged.

According to our records, you either cancelled your credit monitoring program membership or questioned the billing for the credit monitoring program, but didn't receive a full refund. Although we disagree with the FTC's charges, we also want satisfied customers. Therefore, we have reached an agreement with the FTC to pay full refunds to customers like you.

To receive your refund, please do **one** of the following:

- Reply to this email with your full name, address, and daytime telephone number, or write to the address listed below. We will mail a check to the address you give us; **or**

- Call us toll-free at [number] Monday through Friday between 9:00 a.m. and 5:00 p.m. (Pacific time).

Once we receive your information, we will provide your refund within a few weeks. The refund will be in the amount of the annual fee for the applicable year,

less any refund you may have already received. **You must send us your request within _____ days to be eligible for a refund.**

If you have any questions, please send an e-mail to _____. We will respond within two business days.

Sincerely,

Consumerinfo.com, Inc.

[address]

**ATTACHMENT C**
**NOTICE OF REFUND**

Dear [NAME]:

Our records show that you received a free credit report from Consumerinfo.com or Freecreditreport.com sometime between November 1, 2000 and September 15, 2003.

Our free credit report promotion came with a 30-day trial membership in our [name of credit monitoring program] credit monitoring program. After 30 days, unless you cancelled, we automatically enrolled you in the credit monitoring program at an annual fee of $79.95. The Federal Trade Commission (FTC) has alleged that we did not make clear to consumers that they needed to cancel the trial membership to avoid being charged.

According to our records, you either cancelled your credit monitoring program membership or questioned the billing for the credit monitoring program, but didn't receive a full refund. Although we disagree with the FTC's charges, we also want satisfied customers. Therefore, we have reached an agreement with the FTC to pay full refunds to customers like you. To receive your refund, please fill out the enclosed application form and return it to us at the address listed on the form, or call us toll-free at [number] Monday through Friday between 9:00 a.m. and 5:00 p.m. (Pacific Time). Once we receive your information, we will provide your refund within a few weeks. The refund will be in the amount of the annual fee for the applicable year, less any refund you may have already received. **You must send us your request within _____ days to be eligible for a refund.**

If you have any questions, please send an e-mail to _____. We will respond within two business days.

Sincerely,

Consumerinfo.com, Inc.

## APPLICATION FORM

To request your refund, fill out the information below and return it to the address on this form.  **Note: this form must be returned by [date]**


Name:                                   _____

Address:                                _____

City, State and Zip Code:          _____

Daytime phone number:           ( )_____

Consumerinfo.com, Inc.

[Return address]

# ATTACHMENT D

Consumerinfo.com

[address]

FORWARDING AND RETURN POSTAGE GUARANTEED

[Address or address window]

**ATTENTION: REFUND INFORMATION ENCLOSED FOR CREDIT MONITORING CUSTOMERS**

**ATTACHMENT E**

**NOTICE OF RIGHT TO CANCEL**

Dear [NAME]:

Our records show that you received a free credit report from Consumerinfo.com or Freecreditreport.com and are a current customer of our [name of credit monitoring program] credit monitoring program.

Our free credit report promotion came with a 30-day trial membership in our [name of credit monitoring program] credit monitoring program. After 30 days, unless you cancelled, we automatically enrolled you in the credit monitoring program at an annual fee of $79.95. The Federal Trade Commission (FTC) has alleged that we did not make clear to consumers that they needed to cancel the trial membership to avoid being charged.

Although we disagree with the FTC's charges, we also want satisfied customers. Therefore, we have reached an agreement with the FTC to allow customers like you to cancel their credit monitoring program and receive a refund for the unused portion of the membership.

If you would like to continue your membership, you don't need to respond. We will continue to charge your account the annual fee of $79.95. If you would like to cancel your membership and receive a refund, please do one of the following:

- Reply to this email with your full name, address, and daytime telephone number, or write to the address listed below. We will cancel your membership and mail a refund check to the address you give us.
- Call us toll-free at [number] Monday through Friday between 9:00 a.m. and 5:00 p.m. (Pacific time).

1       Once we receive your information, we will provide your refund within a few

2   weeks.  The refund will be in the amount of the unused portion of your current

3   membership term. **You must send us your request within _____ days to be**

4   **eligible for a refund.**

5

6       If you have any questions, please send an e-mail to

7   _____.  We will respond within two business

8   days.

9

10            Sincerely,

11

12            Consumerinfo.com, Inc.

13            [address]

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

## ATTACHMENT F

2

## NOTICE OF RIGHT TO CANCEL

3

Dear [NAME]:

4

5

Our records show that you received a free credit report from

6

Consumerinfo.com or Freecreditreport.com and are a current customer of our

7

[name of credit monitoring program] credit monitoring program.

8

9

Our free credit report promotion came with a 30-day trial membership in our

10

[name of credit monitoring program] credit monitoring program.  After 30 days,

11

unless you cancelled, we automatically enrolled you in the credit monitoring

12

program at an annual fee of $79.95.  The Federal Trade Commission (FTC) has

13

alleged that we did not make clear to consumers that they needed to cancel the trial

14

membership to avoid being charged.

15

16

Although we disagree with the FTC's charges, we also want satisfied

17

customers.  Therefore, we have reached an agreement with the FTC to allow

18

customers like you to cancel their credit monitoring program and receive a refund

19

for the unused portion of the membership.

20

21

If you would like to continue your membership, you don't need to respond.

22

We will continue to charge your account the annual fee of $79.95.  If you would

23

like to cancel your membership and receive a refund, please fill out the enclosed

24

application form and return it to us at the address listed on the form, or call us toll-

25

free at [number] Monday through Friday between 9:00 a.m. and 5:00 p.m. (Pacific

26

Time). Once we receive your information, we will provide your refund within a few

27

weeks.  The refund will be in the amount of the unused portion of your current

membership term. **You must send us your request within _____ days to be eligible for a refund.**

If you have any questions, please send an e-mail to
_____. We will respond within two business days.

Sincerely,

Consumerinfo.com, Inc.

**APPLICATION FORM**

To cancel your credit monitoring program membership and receive a partial refund, fill out the information below and return it to the address on this form. **Note: this form must be returned by [date]**

Name: _____

Address: _____

City, State and Zip Code: _____

Daytime phone number: (___) _____

Consumerinfo.com, Inc.
[Return address]

# ATTACHMENT G

Consumerinfo.com

[address]

FORWARDING AND RETURN POSTAGE GUARANTEED

[Address or address window]

**ATTENTION: IMPORTANT NOTICE ABOUT YOUR [name of credit monitoring program] CREDIT MONITORING**

1

# ATTACHMENT H

2

3
## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
4

5
FEDERAL TRADE COMMISSION,  )   CV

6
    Plaintiff,    )

7
        v.    )   AFFIDAVIT OF
                    )   DEFENDANT
8                )   CONSUMERINFO.COM
CONSUMERINFO.COM., INC., a   )   doing business as
9
corporation,    )   EXPERIAN CONSUMER DIRECT,
                    )   QSPACE, INC., and IPLACE, INC.
10
doing business as    )

11
EXPERIAN CONSUMER DIRECT,   )
QSPACE, INC.,    )
12
and IPLACE INC.,    )

13                )
    Defendant.    )
14
────────────────────────

15      [Name of defendant's certifying official], being duly sworn, hereby states and affirms as

16  follows:

17      1.      My name is_____.  My current residence address is

18  _____.  I am a citizen of the United States

19  and am over the age of eighteen.  I have personal knowledge of the facts set forth in this Affidavit.

20      2.      I am an officer of defendant Consumerinfo.com in *FTC v. Consumerinfo.com*

21  (United States District Court for the Central District of California).

22      3.      On _____, I received a copy of the Stipulated Final Judgment

23  and Order for Permanent Injunction, which was signed by the Honorable _____

24  and entered by the Court on _____.  A true and correct copy of the Order I

25  received is appended to this Affidavit.

26      I declare under penalty of perjury under the laws of the United States that the foregoing is

27  true and correct.  Executed on _____, 2005, at _____.

By: _____

State of _____, City of _____

    Subscribed and sworn to before me

this _____ day of _____, 2005.


_____

Notary Public

My Commission Expires:

_____

Exhibit B

1  WILLIAM BLUMENTHAL
   General Counsel

2  KAREN JAGIELSKI
3  MALINI MITHAL
   Federal Trade Commission
4  600 Pennsylvania Avenue, N.W.
   Washington, D.C. 20580
5  (202) 326-2509 (voice)
   (202) 326-2558 (facsimile)
6  kjagielski@ftc.gov
   mmithal1@ftc.gov
7
   RAYMOND E. MCKOWN, Bar # 150975
8  Federal Trade Commission
   10877 Wilshire Blvd., Ste. 700
9  Los Angeles, CA 90024
   (310) 824-4325 (voice)
10 (310) 824-4380 (facsimile)
   rmckown@ftc.gov
11
   Attorneys for Plaintiff
12 Federal Trade Commission

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16 FEDERAL TRADE COMMISSION,        CV SACV05-801 AHS (MLGx)

17              Plaintiff,

18        v.

19 CONSUMERINFO.COM, INC., a
   corporation,                      SUPPLEMENTAL STIPULATED

20 doing business as                 JUDGMENT AND ORDER FOR
                                     PERMANENT INJUNCTION AND
21 EXPERIAN CONSUMER DIRECT,         MONETARY RELIEF
   QSPACE, INC., and IPLACE, INC.
22
                Defendant.           THIS CONSTITUTES NOTICE OF ENTRY
23                                   AS REQUIRED BY FRCP, RULE 77(d).

24

25      Plaintiff Federal Trade Commission ("FTC" or "Commission") and Defendant

26 Consumerinfo.com, Inc., doing business as Experian Consumer Direct, Qspace,

27 Inc., and Iplace, Inc., jointly stipulate to this Supplemental Stipulated Judgment

28

1  and Order for Permanent Injunction and Monetary Relief ("Supplemental
2  Order"), which resolves the FTC's allegation that Defendant violated the
3  Stipulated Permanent Injunction ("Final Order") entered by this Court on August
4  31, 2005.

5  **NOW THEREFORE IT IS HEREBY ORDERED AS FOLLOWS:**
6  **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

7  A.  This Court has jurisdiction over the subject matter of this case and over
8  Defendant.

9  B.  Venue in this district is proper under 28 U.S.C. § 1391(b) and (c), and 15
10  U.S.C. § 53(b).

11  C.  The acts and practices of Defendant are in or affecting commerce, as
12  "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

13  D.  The Final Order, *inter alia*, requires Defendant to make certain
14  disclosures in connection with the marketing of Defendant's credit reports
15  and credit monitoring program.

16  E.  All provisions of the Final Order remain in full force and effect except as
17  otherwise stated in this Supplemental Order.

18  F.  Defendant ran television advertisements regarding its credit monitoring
19  program in September and October 2005. The FTC alleges that these
20  advertisements violated the Final Order by failing to make certain
21  required disclosures.

22  G.  Defendant agrees to the entry of this Supplemental Order without any
23  finding or admission of liability as to any violation of the Final Order.

24  H.  Defendant waives: (a) all rights to seek appellate review or otherwise
25  challenge or contest the validity of this Supplemental Order; (b) any claim
26  Defendant may have against the Commission, its employees,
27  representatives, or agents that relate to the matter stated herein; (c) all
28  claims under the Equal Access to Justice Act, 28 U.S.C. § 2412, as

1    amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996); and (d) any

2    rights to attorney's fees that may arise under said provision of law.

3  I.    Entry of this Supplemental Order is in the public interest.

4  **I.    PROHIBITED BUSINESS ACTIVITIES**

5    **IT IS ORDERED** that Defendant and Defendant's successors, assigns,

6  officers, agents, and all other persons or entities within the scope of Fed. R. Civ.

7  P. 65, whether acting directly or through any sole proprietorship, partnership,

8  limited liability company, corporation, subsidiary, branch, division, or other

9  entity, including all other persons or entities in active concert or participation

10 with them, who receive actual notice of this Supplemental Order by personal

11 service or otherwise, in connection with the advertising, promoting, offering for

12 sale, or sale of consumer reports, credit scores, credit monitoring programs, or

13 any other product, program, or service relating to consumer reports, are hereby

14 permanently restrained and enjoined from misrepresenting, or assisting others in

15 misrepresenting, expressly or by implication, Defendant's affiliation with the

16 annual credit report available to consumers under the Fair Credit Reporting Act,

17 15 U.S.C. § 1681j, or any other federal law.

18 **II.    MONETARY RELIEF**

19   **IT IS FURTHER ORDERED** that:

20   Defendant is ordered to pay THREE HUNDRED THOUSAND DOLLARS

21 ($300,000.00) to the Commission, within five (5) days of entry of this

22 Supplemental Order, pursuant to payment instructions provided by the

23 Commission.

24   A.    All funds paid pursuant to this Paragraph shall be deposited into a fund

25         administered by the Commission or its agent to be used for equitable

26         relief, including but not limited to consumer redress and any attendant

27         expenses for the administration of any redress fund.  In the event that

28         direct redress to consumers is wholly or partially impracticable or funds

1    remain after redress is completed, the Commission may apply any
2    remaining funds for such other equitable relief (including consumer
3    information remedies) as it determines to be reasonably related to
4    Defendant's alleged violations of the Final Order. Any funds not used for
5    such equitable relief shall be deposited to the United States Treasury as
6    equitable disgorgement. Defendant shall have no right to challenge the
7    Commission's choice of remedies or the manner of distribution.

8  B.  Defendant acknowledges and agrees that all money paid pursuant to this
9    Supplemental Order is irrevocably paid to the Commission for purposes
10   of settlement between the parties, and Defendant relinquishes all rights,
11   title, and interest to such money. Defendant shall make no claim or
12   demand for the return of the funds, directly or indirectly, through counsel
13   or otherwise, and in the event of bankruptcy of Defendant, Defendant
14   acknowledges that the funds are not part of the debtor's estate, nor does
15   the estate have any claim or interest therein.

16 C.  The monetary relief entered pursuant to this Paragraph is equitable
17   monetary relief, solely remedial in nature, and not a fine, penalty, punitive
18   assessment, or forfeiture. Defendant's payment of the monetary relief
19   shall be deemed to satisfy completely the monetary relief for the alleged
20   violation of the Final Order.

21 **III.  CHANGE OF NOTIFICATION ADDRESS**

22      **IT IS FURTHER ORDERED** that the address for all written notifications
23  to the Commission shall be changed from the address listed in Subparagraph V.C.
24  of the Final Order to the following address:

25      Associate Director
        Division of Enforcement
26      Federal Trade Commission
        600 Pennsylvania Avenue, N.W., Room NJ-2122
27      Washington, D.C. 20580
        RE: FTC v. Consumerinfo.com, Inc.
28

## IV. RECORD KEEPING

**IT IS FURTHER ORDERED** that, for a period of six (6) years from the date of entry of this Supplemental Order, in connection with any business where Defendant is the majority owner of the business or directly or indirectly manages or controls the business, Defendant and its agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Supplemental Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A. Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues.

B. Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable.

C. Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business.

D. Complaints and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests.

E. Copies of all sales scripts, training materials, advertisements, or other marketing materials.

F. All records and documents necessary to demonstrate full compliance with each provision of this Supplemental Order, including but not limited to, copies of acknowledgments of receipt of this Supplemental Order, required by Paragraph V.

//

1  **V.   DISTRIBUTION OF SUPPLEMENTAL ORDER BY DEFENDANT**

2     **IT IS FURTHER ORDERED** that, for a period of three (3) years from the

3  date of entry of this Supplemental Order, Defendant shall deliver a copy of this

4  Supplemental Order to all of its principals, officers, and directors, and to all

5  managers who have responsibility directly or indirectly for any matters covered

6  by this Supplemental Order.  Defendant also shall deliver an accurate summary of

7  this Supplemental Order to all of its employees who are engaged in conduct

8  related to the advertising, marketing, sale, or delivery of, or who respond to

9  consumer complaints or inquiries regarding consumer reports, credit scores, or

10 any credit monitoring program.  For current personnel, delivery shall be within

11 five (5) days of service of this Supplemental Order upon Defendant.  For new

12 personnel, delivery shall occur prior to their assuming their responsibilities.

13 Defendant must secure a signed and dated statement acknowledging receipt of

14 this Supplemental Order, within thirty (30) days of delivery, from all persons

15 receiving a copy of this Supplemental Order pursuant to this Paragraph V.

16 **VI.  RETENTION OF JURISDICTION**

17    **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

18 matter for purposes of construction, modification, and enforcement of this

19 Supplemental Order.

20 **VII. COSTS AND ATTORNEY'S FEES**

21    **IT IS FURTHER ORDERED** that each party shall bear its own costs and

22 attorney's fees incurred in connection with this action.

23 //

24 //

25 //

26 //

27 //

28 //

1  VIII.   NOTICE OF ENTRY OF SUPPLEMENTAL ORDER

2        IT IS FURTHER ORDERED that entry in the docket of this

3  Supplemental Order by the Clerk of Court shall constitute notice to Defendant of

4  the terms and conditions of this Supplemental Order, and that Defendant waives

5  all rights to contest in any future proceeding whether Defendant was properly

6  served with this Supplemental Order.

7

8  IT IS SO ORDERED:

9  Dated this _____ day of _____ ALICEMARIE H. STOTLER, 2005.

10     JAN - 8 2007                        CHIEF U.S. DISTRICT JUDGE

11

12                                          Hon. Alicemarie H. Stotler
                                            United States District Judge

13  STIPULATED BY:

14

15  _____          _____
    Raymond E. McKown, Esq.            Consumerinfo.com dba Experian
16  Karen Jagielski, Esq.              Consumer Direct, Qspace, Inc., and
    Malini Mithal, Esq.                Iplace, Inc.
17  Attorneys for Plaintiff            by: Edward S. Ojdana
    Federal Trade Commission           Chief Executive Officer

18

19                                     _____
                                       by: Richard Grabowski, Esq.
20                                     Attorney for Defendant
                                       Jones Day
21                                     3 Park Plaza, Suite 1100
                                       Irvine, California 92614-8505

22                                     _____
                                       by: Anne P. Fortney, Esq.
23                                     Attorney for Defendant
                                       Hudson Cook, LLP
24                                     1020 19th Street, N.W.
                                       Washington, D.C. 20036

25

26

27

28

                            Page 7 of 7

1 | WILLIAM BLUMENTHAL
General Counsel
2
KAREN JAGIELSKI
3 | MALINI MITHAL
Federal Trade Commission
4 | 600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
5 | (202) 326-2509 (voice)
(202) 326-2558 (facsimile)
6 | kjagielski@ftc.gov
mmithal1@ftc.gov
7
RAYMOND E. MCKOWN, Bar # 150975
8 | Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
9 | Los Angeles, CA 90024
(310) 824-4325 (voice)
10 | (310) 824-4380 (facsimile)
rmckown@ftc.gov
11
Attorneys for Plaintiff
12 | Federal Trade Commission

13

14 UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

15

16 | FEDERAL TRADE COMMISSION,      CV SACV05-801 AHS (MLGx)

17 | Plaintiff,

18 | v.

19 | CONSUMERINFO.COM, INC., a
corporation,                    CERTIFICATE OF SERVICE

20 | doing business as

21 | EXPERIAN CONSUMER DIRECT,
22 | QSPACE, INC., and IPLACE, INC.

23 | Defendant.

24

25 **CERTIFICATE OF SERVICE**

26 I hereby certify that on January 3, 2007, a true and correct copy of the

27 Supplemental Stipulated Judgment and Order for Permanent Injunction and

28

1  Monetary Relief was served by Federal Express overnight mail on Anne P.

2  Fortney at Hudson Cook LLP, 1020 19th St., N.W., 7th Floor, Washington, D.C.

3  20036.

4  Executed this 3rd day of January, 2007.

5

6

7  Malini Mithal

8  Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV10- 49 JVS (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [_] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [_] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Karl S. Kronenberger
KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1016363 Alberta Ltd., a numbered Alberta, Canada Corporation dba Just Think Media; 1021018 Alberta Ltd., a numbered Alberta, Canada Corporation dba Just Think Media, **PLAINTIFF(S)** v. | CASE NUMBER<br><br>SACV-10-00049-JVS(ANx) |
| ConsumerInfo.com, Inc., a California corporation; Experian Information Solutions, Inc., an Ohio corporation, **DEFENDANT(S).** | **SUMMONS** |

TO: DEFENDANT(S): ConsumerInfo.com, Inc. and Experian Information Solutions, Inc.

A lawsuit has been filed against you.

Within ~~20~~ 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Karl S. Kronenberger , whose address is Kronenberger Burgoyne, LLP, 150 Post Street, Suite 520, San Francisco, CA 94108 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: 12 JAN 2010

By: _____
MARILYN DAVIS
Deputy Clerk

(Seal of the Court)

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>1016363 Alberta Ltd., a numbered Alberta, Canada corp., dba Just Think Media,<br>1021018 Alberta Ltd., a numbered Alberta, Canada corp., dba Just Think Media, | DEFENDANTS<br>ConsumerInfo.com, Inc., a California corporation; Experian Information<br>Solutions, Inc., an Ohio corporation, |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Karl S. Kronenberger, Kroenberger Burgoyne, LLP<br>150 Post Street, Suite 520, San Francisco, CA 94108<br>(415) 955 1155 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**  For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No     ☐ **MONEY DEMANDED IN COMPLAINT:** $ TBD

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
False Advertising Under the Lanham Act (15 USC §1125(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☑ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: SACV-10-00049

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV 71 (05/08)     CIVIL COVER SHEET     Page 1 of 2

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No   ☒ Yes
If yes, list case number(s): <u>SACV09-0055-DOC</u>

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Alberta, Canada (both Plaintiffs) |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County (ConsumerInfo.com, Inc.) | Ohio (Experian Information Solutions, Inc.) |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date <u>January 12, 2010</u>

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |